UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-209

ROSE MOSS, INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE OF
GARY L. MOSS                                                                              PLAINTIFF

v.

UNUM LIFE INSURANCE COMPANY OF
AMERICA, SERVICEMASTER and
SERVICEMASTER HEALTH AND
WELFARE BENEFIT PLAN                                                           DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court upon Defendants The ServiceMaster Company, Inc. ("ServiceMaster") and The ServiceMaster Health and Welfare Benefit Plan's (the "Plan") Motion to Dismiss, or in the Alternative, Motion for Summary Judgment Dismissing the Amended Complaint (Docket #33), and Defendant Unum Life Insurance Company of America's ("Unum") Motion to Dismiss Counts II through VIII and ERISA Penalty Claim in Plaintiff's First Amended Complaint (Docket #35). Plaintiff has responded (Docket #39, 40). Defendants have replied (Docket #44, 46). This matter is now ripe for adjudication. For the following reasons, Defendants ServiceMaster and the Plan's motion is GRANTED IN PART and DENIED IN PART, and Defendant Unum's motion is GRANTED.

**BACKGROUND**

Gary L. Moss ("Moss") was an employee of ServiceMaster until his termination on August 5, 2008. As part of his employment, Moss was a participant in ServiceMaster's life insurance plan, through which Moss paid monthly premiums to Unum for supplemental life insurance. ServiceMaster paid a premium of approximately $14.04 per month for basic life

insurance for Moss. In addition, Moss paid $117.20 per month for supplemental life insurance through Unum. Moss passed away approximately two months after his termination from ServiceMaster. Plaintiff Rose Moss is Moss's widow and life insurance beneficiary.

Suffering from lung cancer, Moss had been declared and treated as disabled by ServiceMaster and Unum since April 13, 2008. On April 25, 2008, ServiceMaster sent Moss a statement of benefits, which detailed those benefits that would continue as a result of his long-term disability. This included his supplemental life insurance policy at a monthly premium of $117.20, and stated "[c]overage will continue at the costs listed below for the remainder of the plan year." Moss continued to pay $117.20 each month after he began receiving disability benefits. Combined with his other benefits, Moss regularly paid $450.90 to ServiceMaster each month.

On August 7, 2008, following Moss's termination, ServiceMaster sent a conversion/portability notice to Moss regarding conversion of his benefits into personal insurance policies obtained directly through the insurance companies, including Unum. The notice stated as follows:

> This notice provides the necessary plan information you will need if you wish to convert or port your benefit coverage to a personal policy directly with the insurance company. Included is a form that you can submit to your insurance company in order to convert or port your benefits.
>
> Please note: If you choose to continue coverage, you must return this notice with the application and the first premium payment within 31 days of the date your coverage ends. If this letter is not attached, coverage will be denied.

Conversion/Portability Notice, DN 24-17, p. 1. This notice included information regarding Moss's basic and supplemental life insurance. Moss acknowledged his right to convert and that he must do so within 31 days by signing and dating a "Notification of Conversion Privilege"

2

form on August 29, 2008.

On August 10, 2008, ServiceMaster sent Moss a billing notice which showed payments by Moss of $450.90 and a credit of $378.18. The statement indicated that the credit was either "a correction to a previous charge, a change in coverage, a refund of prepaid amounts, or a returned payment." The statement also showed a zero balance as the amount due. On August 25, 2008, Moss's billing notice showed $2,516.90 in payments received, $719.10 in current billing charges (COBRA medical charges), $224.93 in account adjustments, and a credit of $1,121.97. ServiceMaster asserts that the $2,516.90 payment was for COBRA coverage after Moss's termination.

Moss applied for conversion of his life insurance in the amount of $110,000.00 for Moss and $50,000.00 for Plaintiff on September 9, 2008. On September 10, 2008, Unum contacted Moss to request completion of two separate enrollment forms. The letter stated that a reply must be received by September 26, 2008. Moss passed away on September 24, 2008. On October 24, 2008, Unum sent another letter to Moss indicating that he had not completed the required forms and his file was closed. On November 10, 2008, Unum agreed to reopen the file and provide life insurance benefits to Plaintiff in the amount of $110,000.00. Plaintiff responded on November 16, 2008, and accepted the $110,000.00. Unum did not pay any sum of money to Plaintiff for supplemental life insurance.

Plaintiff filed suit in McCracken Circuit Court on November 13, 2009, to recover supplemental life insurance benefits. Defendant Unum removed the case to this Court on December 16, 2009. On January 18, 2010, Defendants ServiceMaster and the Plan filed a motion to dismiss. Plaintiff responded and filed a motion for limited discovery as to whether

Plaintiff's claims are exempt under the safe harbor provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). The Court granted Plaintiff leave to amend her Complaint on May 21, 2010, which Plaintiff filed on June 4, 2010. On July 9, 2010, Defendants ServiceMaster and the Plan filed the current motion to dismiss the Amended Complaint, or in the alternative, motion for summary judgment. Defendant Unum filed a motion to dismiss counts II through VIII and the ERISA penalty claim on the same day. The parties have fully briefed both of these motions. Defendants ServiceMaster and the Plan have also filed a motion for protective order, or in the alternative, motion for extension of time to respond to discovery, which is addressed in a separate order.

## STANDARD

Defendants filed their motions as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The parties rely on outside materials in support of their motions and responses. Generally, a Court deciding a motion to dismiss pursuant to Rule 12(b)(6) cannot consider facts outside the pleadings. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Therefore, the Court will treat these motions as motions for summary judgment.

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v.*

4

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Plaintiff's Amended Complaint contains eight counts and what appears to be a claim for statutory penalties under 29 U.S.C. § 1132(c).

### I. Plaintiff's State Law Claims

Defendants ServiceMaster, the Plan, and Unum argue that Plaintiff's state law claims are preempted because ERISA applies to the Plan in question. *See, e.g.*, *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996). Plaintiff's state law claims seek recovery under Kentucky insurance laws and theories of promissory estoppel. If ERISA applies, these claims may be preempted if they do not point to "'any violation of a legal duty independent of ERISA.'" *Briscoe v. Fine*, 444 F.3d 478, 499 (6th Cir. 2006) (quoting *Aetna Health Inc. v.*

5

*Davila*, 524 U.S. 200, 214 (2004)).

There is no dispute that ServiceMaster's Plan qualifies as an employee welfare benefit plan that is governed by ERISA. Plaintiff argues, however, that ERISA does not govern this case because the issues center around a conversion policy, not an employer plan. "An ERISA policy is converted when a 'participant leaves the plan and obtains a new, separate, individual policy based on conversion rights contained in the ERISA plan.'" *Alexander v. Provident Life and Accident Ins. Co.*, 663 F. Supp. 2d 627, 635 (E.D. Tenn. 2009) (quoting *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 876 (9th Cir. 2001)). As Unum points out, there is a split in authority among the Circuits as to whether a conversion policy is governed by ERISA. *Compare Demars v. CIGNA Corp.*, 173 F.3d 443, 446 (1st Cir. 1999) (finding that conversion policies are not governed by ERISA because "employers do not bear any administrative or financial responsibility for them"), *and Waks*, 263 F.3d at 876 (holding that conversion policy is "independent of the ERISA plan and does not place any burdens on the plan administrator or the plan"), *with Painter v. Golden Rule Ins. Co.*, 121 F.3d 436, 440 (8th Cir. 1997) (conversion policy was a "component" of the original ERISA plan and thus governed by ERISA), *cert. denied*, 523 U.S. 1074 (1998), *and Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1346-47 (11th Cir. 1994) (conversion policy for a group of ex-employees was governed by ERISA).[1]

The Court need not determine whether a conversion policy is governed by ERISA

---

[1] The Sixth Circuit has not directly addressed the issue of whether ERISA governs conversion policies. In *Massachusetts Cas. Ins. Co. v. Reynolds*, the Court distinguished between conversion and continuation coverage. 113 F.3d 1450, 1453 (6th Cir. 1997). In that case, the Sixth Circuit held that an individual policy that remained in force and without change following termination of the plaintiff's employment was continuation coverage governed by ERISA. *Id.*

because the issues in this case focus on conversion rights, not a conversion policy. Although a conversion policy does exist as to Moss's basic life insurance, Unum paid $110,000.00 under this policy to Plaintiff and this payment remains unchallenged. The real dispute centers on whether Moss's supplemental life insurance coverage should have been converted as well. Federal courts are in agreement that conversion *rights* are governed by ERISA. *See, e.g.*, *Demars*, 173 F.3d at 448 (citing several district court cases); *White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26, 28 (4th Cir. 1997) ("[E]ven under the minority view, ERISA governs the right of conversion to an individual policy."), *cert. denied*, 522 U.S. 950 (1997); *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1132-33 (9th Cir. 1992); *Dillon v. Metro. Life Ins. Co.*, No. 09 Civ. 7958(SHS), 2010 WL 2292203, at *4 (S.D.N.Y. 2010) (process of conversion is governed by ERISA); *Mimbs v. Commercial Life Ins. Co.*, 818 F. Supp. 1556, 1561 (S.D. Ga. 1993).

Because ERISA applies to this case, the Court must determine whether Plaintiff's state law claims are preempted. *See* 29 U.S.C. § 1144(a).

> A primary purpose of ERISA is to ensure the integrity and primacy of the written plans. . . . ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). . . . Indeed, "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991). Therefore, "only those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted." *Id.*

*Longaberger Co. v. Kolt*, 586 F.3d 459, 472 (6th Cir. 2009). "A state law may therefore be preempted 'even if the law is not specifically designed to affect such plans, or the effect is only indirect.'" *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 861 (6th Cir. 2007) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)). Three categories of state law claims are clearly

7

preempted: (1) those that "'mandate employee benefit structures or their administration'"; (2) those that seek to provide an alternate means of enforcement; and (3) those that serve to function as "'regulation of an ERISA plan itself.'" *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) (quoting *Coyne & Delaney Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)). For other claims, the Court's focus should be on "whether the remedy sought by a plaintiff is primarily plan-related." *Thurman*, 484 F.3d at 861.

Count I of Plaintiff's Amended Complaint seeks benefits that could have been recovered under the supplemental life insurance policy. Unum has interpreted this Count as seeking recovery for wrongfully denied benefits under ERISA. The Court believes this is an appropriate interpretation and will discuss this Count in the following section.

Count II alleges that Moss's conversion period had not expired at the time of his death, and Plaintiff is entitled to relief under Kentucky Revised Statutes sections 304.16-190 and 304.16-210. Count II seeks an alternate means of enforcement, as the remedy sought is the same as it would be under ERISA. This Count clearly "relates to" the rights conveyed by an employee benefit plan. *See* 29 U.S.C. § 1144(a). Therefore, Count II is preempted and summary judgment is granted as to all Defendants.

Count III alleges that Unum extended the conversion period beyond Moss's death in its September 10, 2008, letter. Because of this extension, Plaintiff believes she is entitled to the sum of $293,000.00 because conversion of the supplemental plan was permitted until September 26, 2008. Again, this Count seeks the same recovery that is available under ERISA, and relates to Moss's conversion rights under the Plan. Accordingly, Count III is preempted and summary judgment is granted as to all Defendants.

Counts IV, V, and VI seek recovery under various theories of promissory estoppel. The Sixth Circuit recognizes estoppel as "a viable theory in ERISA cases . . . ." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (en banc). To establish an estoppel claim, the plaintiff must establish the following:

> (1) there must be conduct or language amounting to a representation of material fact;
>
> (2) the party to be estopped must be aware of the true facts;
>
> (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends;
>
> (4) the party asserting the estoppel must be unaware of the true facts; and
>
> (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 428-29 (6th Cir. 2006) (quoting *Sprague*, 133 F.3d at 403)). "Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague*, 133 F.3d at 404 (citations omitted). Therefore, in order to state a claim for promissory estoppel, Plaintiff must plead plan ambiguity. *See Moore*, 458 F.3d at 429 ("Plaintiffs cannot recover under an estoppel theory for misrepresentations which contradict unambiguous, written plan terms because their reliance on the subsequent representation would be unreasonable."); *see also Putney v. Med. Mut. of Ohio*, 111 F. App'x 803, 807 (6th Cir. 2004) (citing *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003)).

Plaintiff appears to argue that portions of the Plan and the Unum Policy are ambiguous because they are inconsistent. According to the Plan, a ServiceMaster employee is eligible to

9

participate in the Plan "if you are a regular full-time U.S. associate who is regularly scheduled to work at least 30 hours a week for the company in the United States." The Plan, DN 14-4, p. 15. Employees are no longer eligible if they experience a layoff, termination, retirement, or death, or if they no longer meet the eligibility requirements for coverage. The Plan, DN 14-4, p. 25. When an employee leaves ServiceMaster, he or she has the option to convert basic, supplemental, and dependent life insurance to an individual whole life premium plan through Unum. The Plan, DN 14-4, p. 26. "You or your dependent must apply for a conversion policy and pay the first premium within 31 days after your employment terminates or you or your dependents are no longer eligible." The Plan, DN 14-4, p. 26.

Under Unum's Policy, employees are eligible for coverage if they are "regular full-time employees who are regularly scheduled to work at least 30 hours a week in the United States with the Employer." Unum Policy, DN 24-3, p. 4. An insured must continue to make premium payments while he or she is disabled. Unum Policy, DN 24-3, p. 17. "If you are not working due to injury or sickness, and if premium is paid, you may continue to be covered for up to 12 months." Unum Policy, DN 24-3, p. 24. Coverage ends on the earliest of:

> - the date the Summary of Benefits or a plan is cancelled;
> - the date you no longer are in an eligible group;
> - the date your eligible group is no longer covered;
> - the last day of the period for which you made any required contributions; or
> - the premium due date coincident with or next following the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Unum Policy, DN 24-3, p. 25. Under Unum's Policy, conversion is permitted following the end of coverage:

> When coverage ends under the plan, you and your dependents can convert your coverages to individual life policies . . . . The maximum amounts you can convert

10

are the amounts you and your dependents are insured for under the plan. You may convert a lower amount of life insurance.

You and your dependents must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after the date:

- your employment terminates; or
- you or your dependents no longer are eligible to participate in the coverage of the plan.

Unum Policy, DN 24-4, p. 1. If an insured dies within the 31 day application period, "Unum will pay the beneficiary(ies) the amount of insurance that could have been converted," regardless of whether the insured had applied for conversion. Unum Policy, DN 24-4, p. 2.

Plaintiff alleges that although ServiceMaster contends the language of the Plan and Policy preclude conversion after 31 days following Plaintiff's termination, the language actually supports conversion through October 1, 2008. This is because Plaintiff allegedly paid premiums for supplemental life insurance through the end of August of 2008, which would extend the conversion period until October 1, 2008. Plaintiff also believes that the provisions on eligibility for coverage and termination of coverage conflict with the statement that an employee not working due to sickness may continue to be covered up to 12 months. Plaintiff asserts that the statement providing coverage "may continue" up to 12 months is ambiguous as it could be read to guarantee coverage for 12 months so long as an employee continues paying the premium.

The Court finds that Plaintiff's arguments are without merit as the Plan and Policy language is consistent and unambiguous. An employee becomes eligible to participate in the Plan and receive coverage under the Policy if they are "regular full-time" employees who work "at least 30 hours a week." Moss was such an employee prior to being declared disabled. Therefore, he was eligible to participate in the Plan and to receive basic and supplemental life

11

insurance. If an employee then becomes sick or injured and must miss work as a result, the Policy provides that coverage may continue so long as the employee continues to pay the premium. Moss was an eligible employee when he became disabled, and this exception allowed him to maintain coverage. Therefore, these two provisions do not conflict, nor are they ambiguous.

Once an employee is not working due to injury or sickness, he or she "may continue to be covered for up to 12 months." Unum Policy, DN 24-3, p. 24. The word "may" should be given its ordinary meaning,[2] which cannot be read as a guarantee of coverage for twelve months. *See, e.g.*, *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73-74 (Ky. 2010) (terms not defined in an insurance policy are given their ordinary meaning if not ambiguous). The injury or sickness provision does not extend Moss's conversion period because it provides "[i]f you are *not working* due to injury or sickness . . . you may continue to be covered . . . ." Unum Policy, DN 24-3, p. 24 (emphasis added). Thus, continuation of coverage is conditional on Moss not working due to injury or sickness. Following Moss's termination, he was not working due to his termination, not due to injury or sickness. Accordingly, this provision no longer applied after Moss's termination and whether he continued to pay premiums is irrelevant. The Plan is unambiguous in stating that coverage ends upon termination, and conversion must take place within 31 days. Because Plaintiff has failed to sufficiently allege ambiguity, Plaintiff's promissory estoppel claims cannot stand, and summary judgment must be granted as to all

---

[2]"May" is defined by Oxford Dictionaries Online as "expressing possibility," "expressing permission," or "expressing a wish or hope." "may." Oxford Dictionaries. April 2010. http://english.oxforddictionaries.com/view/entry/m_en_us1266614?rskey=JGt1tZ&result=3 (accessed Sept. 16, 2010).

Defendants on Counts IV, V, and VI.

Count VIII of Plaintiff's Amended Complaint seeks recovery under Kentucky Revised Statutes section 304.12-230. This section details Kentucky's insurance bad faith claims, or "unfair claims settlement practices." KY. REV. STAT. ANN. § 304.12-230. Plaintiff also seeks prejudgment interest and attorney's fees under section 304.12-235. KY. REV. STAT. ANN. § 304.12-235 (allowing for twelve percent prejudgment interest and attorney's fees if an insurer fails to settle a claim within thirty days from which proof of said claim is furnished to the insurer). Bad faith claims are routinely preempted by ERISA because they stem from the wrongful denial of benefits under the employee welfare benefit plan. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987); *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 582 (6th Cir. 2002); *Crider v. Life Ins. Co. of North America*, No. 3:07-CV-331-H, 2008 WL 2782871, at *4 (W.D. Ky. July 15, 2008). Accordingly, Plaintiff's Count VIII cannot survive summary judgment as to all Defendants.

## II. Plaintiff's ERISA Claims

### A. *Wrongful Denial of Benefits (Count I)*

The Court reads Count I to seek recovery for wrongful denial of benefits under 29 U.S.C. §1132(a), which provides a civil cause of action for a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "'[T]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan.'" *Terry v. Bayer Corp.*, 145 F.3d 28, 36 (1st Cir. 1998) (quoting *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997)). Such a

defendant is deemed a fiduciary under ERISA. *See* 29 U.S.C. § 1002(21)(A). The Sixth Circuit has provided additional guidance on the issue of fiduciaries within the context of the administration of ERISA plans:

> Under ERISA a person is a fiduciary only with respect to those aspects of the plan over which he or she exercises authority or control. *See Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998). When an insurance company administers claims for employee welfare benefit plans and has authority to grant or deny claims, the insurance company is a "fiduciary" for ERISA purposes. *See Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1035 (6th Cir. 1993). An employer who does not control or influence the decision to deny benefits is not the fiduciary with respect to denial of benefit claims. *Chiera v. John Hancock Mut. Life Ins. Co.*, 3 Fed. Appx. 384, 389 (6th Cir. 1001) (unpublished decision).

*Moore*, 458 F.3d at 438. In this case, it is clear that Unum was responsible for granting or denying claims under the Policy. *See, e.g.*, The Plan, DN 14-5, p. 77 (listing Unum as claims administrator for basic and supplemental life insurance). Therefore, Count I shall go forward as to Unum. In addition, the Plan is an appropriate defendant as it may be sued to recover plan benefits. *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 832 (1988); *Carter v. Montgomery Ward & Co.*, 76 F.R.D. 565, 568 (E.D. Tenn. 1977); *see also* 29 U.S.C. § 1132(d)(2).

Plaintiff alleges that ServiceMaster is also a proper defendant under Count I. In support of this argument, Plaintiff argues that ServiceMaster has the ability to review claims that were denied by Unum, the claims administrator. The Plan, DN 14-5, p. 71 ("The claims or plan administrator will then review the claim again and make a decision . . . ."). ServiceMaster is the plan administrator, but also has discretion to delegate responsibilities to third parties, like Unum. The Plan, DN 14-5, p. 75. In this case, there is no evidence that ServiceMaster played any role whatsoever in the denial of Moss's supplemental life insurance benefits. Accordingly, the Court

finds that ServiceMaster is not a fiduciary as to the denial of benefits claim, and summary judgment as to Count I is granted in favor of ServiceMaster.

      B.      *Fiduciary Duty*

A plaintiff may bring a civil suit under ERISA pursuant to 29 U.S.C. § 1132(a)(3) against plan fiduciaries for equitable relief. Count VII of Plaintiff's Amended Complaint alleges that both Unum and ServiceMaster are fiduciaries with respect to the plan, and their material misrepresentations amount to a breach of fiduciary duty. Plaintiff seeks equitable relief in the form of $293,000.00 (the equivalent of the supplemental life insurance benefits) plus interest. ERISA defines a "fiduciary" as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In short, in order for Plaintiff to bring an ERISA claim against Defendants for breach of fiduciary duty, Defendants must exercise "*discretionary* authority over plan management, or *any* authority or control over plan assets." *Briscoe v. Fine*, 444 F.3d 478, 488 (6th Cir. 2006) (emphasis in original) (citing 29 U.S.C. § 1002(A)(21); *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001)).

Both Unum and ServiceMaster assert that Plaintiff's claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) must fail because Plaintiff already has a viable claim for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B). Both Defendants cite to *Varity Corp. v. Howe*, in which the Supreme Court held that appropriate equitable relief was available under §

15

1132(a)(3) because the plaintiffs could not recover benefits under any other provision of § 1132. *See* 516 U.S. 489, 515 (1996) ("[W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"). In addition, the Sixth Circuit interpreted *Varity* to mean that "[t]he Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) (citing *Varity*, 516 U.S. at 512).

Plaintiff relies on a case from the Southern District of Ohio in support of her right to bring a claim for wrongful denial of benefits and a claim for breach of fiduciary duty. *See Little v. UNUMProvident Corp.*, 196 F. Supp. 2d 659 (S.D. Ohio 2002). That case states, "a civil action for recovery of benefits due under the plan may be pursued under ERISA as authorized under 29 U.S.C. § 1132(a)(1)(B), and an action for breach of fiduciary duty may be pursued under 29 U.S.C. § 1132(a)(2)." *Id.* at 672. The Court notes that this statement addresses § 1132(a)(2), rather than § 1132(a)(3), which is the section Plaintiff references in her Amended Complaint. Even so, Plaintiff's argument must fail because *Little* is inapplicable here, as § 1132(a)(2) does not provide an individual remedy. *See Varity*, 516 U.S. at 515 (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)); *see also Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 91-92 (6th Cir. 1997) (finding that § 1132(a)(2) "provide[s] relief only for a plan and not for individual participants").

Plaintiff is essentially attempting to repackage her wrongful denial of benefits claim as a breach of fiduciary duty claim. The relief sought is the same. Because § 1132(a)(2) does not

16

provide an individual remedy for breach of fiduciary duty, and § 1132(a)(3) is not a viable remedy because Plaintiff has a claim under § 1132(a)(1)(B), summary judgment is granted in favor of all Defendants as to Count VII.

### C. ERISA Penalties

Plaintiff's Amended Complaint requests "payment of $110 per day, beyond the thirty days after request was made for the plan documents and their receipt." Am. Compl., DN 24, p. 15. The parties have interpreted this as a request for penalties under 29 U.S.C. § 1132(c). Under that section, a plan administrator's failure "to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days after such request" may result in ERISA penalties of up to $100 per day. 29 U.S.C. § 1132(c)(1). This is a matter left to the Court's discretion. *See id.*

"It is well established that only plan administrators are liable for statutory penalties under § 1132(c)." *Caffey*, 302 F.3d at 584. ServiceMaster is the plan administrator in this case, and delegated responsibility for claims administration to Unum. Plaintiff does not appear to argue that Unum should be held liable for statutory penalties, as Plaintiff has not alleged that Unum failed to provide any requested information. Therefore, summary judgment is granted in favor of Unum as to penalties under § 1132(c)(1). Nor may the Plan be held liable under this provision. Thus, summary judgment is granted as to the Plan as well.

As to ServiceMaster, Plaintiff alleges that she requested a copy of the Plan and the Policy on October 8, 2009. According to Plaintiff, she did not receive a copy of the Policy until November 13, 2009. She thereafter received a copy of the Plan on May 4, 2010. A plan administrator is required to "upon written request of any participant or beneficiary, furnish a

17

copy of the latest updated summary[ ] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

ServiceMaster argues that Plaintiff lacks standing to bring a claim for ERISA penalties. ServiceMaster cites to *Morrison v. Marsh & McLennan Companies, Inc.*, in which the Sixth Circuit held that a widow "was neither a participant nor a beneficiary under the [ ] Plan at the time she commenced this action," and therefore lacked standing. 439 F.3d 295, 304 (6th Cir. 2006). The Sixth Circuit explained as follows:

> The statutory language limits standing to participants or beneficiaries. A participant is defined as any employee or formed employee who is eligible to receive benefits under the policy. 29 U.S.C. § 1002(7). The Supreme Court further defined the term "participant" in *Firestone* stating that it is a "former employee that has . . . a colorable claim to vested benefits." *Firestone*, 489 U.S. at 117, 109 S. Ct. 948 (defining "colorable claim to vested benefits as a reasonable claim that 1) a person will prevail in a suit for benefits or that 2) eligibility requirements will be fulfilled in the future). Eligibility is determined at the time that the lawsuit is filed.

*Id.* at 303-304. In *Morrison*, the plaintiff was a beneficiary who brought a claim seeking relief from the denial of an application for portable life insurance. *Id.* at 297. The insurance company denied the application on February 10, 1999. The plaintiff failed to file a lawsuit until April 30, 2003, despite a three-year statute of limitations period. *Id.* at 298, 301. Accordingly, the Sixth Circuit found that the plaintiff's claims were time-barred, and she had not been considered a beneficiary since February 10, 1999. *Id.* at 303-04. For this reason, she lacked standing. *Id.*

The present case differs in that Plaintiff is still considered a beneficiary as she has a colorable claim to benefits and may still prevail in the present suit. Unlike the plaintiff in *Morrison*, Plaintiff may still be entitled to benefits under 29 U.S.C. § 1132(a)(1)(B). Were the

18

Court to find that Plaintiff lacks standing to recover ERISA penalties, the Court would also have to find that Plaintiff lacks standing to bring a claim for wrongful denial of benefits, and such is not the case. Accordingly, ServiceMaster's lack of standing argument must fail.

In the alternative, ServiceMaster asks the Court to find that ERISA penalties are inappropriate in this case. ServiceMaster urges the Court to exercise its discretion and to consider that ServiceMaster acted in good faith to supply the requested documents. ServiceMaster also asserts that Plaintiff was not prejudiced in any way by the delay. The Court disagrees. Plaintiff's request came well before the start of this litigation. ServiceMaster provided the Policy to Plaintiff on the same day that Plaintiff filed the present action in state court. Plaintiff also filed requests for production of documents to obtain the Plan and the summary plan description, as ServiceMaster had failed to supply these documents within 30 days of the first request. After removal to this Court, ServiceMaster attached a copy of the Plan with its first motion to dismiss, filed on January 18, 2010. Accordingly, the Court believes that Plaintiff's claim that a copy of the Plan was not provided until May 4, 2010, is without merit. However, the Court finds that the delay between the date the Plan should have been provided (November 7, 2009) and the date the Plan was filed with the Court (January 18, 2010) was unacceptable and prejudicial, especially considering litigation had commenced. Moreover, ServiceMaster failed to provide any excuse for the delay, other than an assertion of good faith.

Accordingly, the Court finds that Plaintiff has sufficiently alleged and demonstrated a claim for ERISA penalties as to ServiceMaster. In the interests of judicial economy, the Court grants judgment *sua sponte* in favor of Plaintiff. The Court believes an award of $50 per day is appropriate. For ServiceMaster's delay of 72 days, the Court hereby awards $3,600.00 to

Plaintiff under 29 U.S.C. § 1132(c)(1).

## CONCLUSION

For the foregoing reasons, Defendants ServiceMaster and the Plan's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment Dismissing the Amended Complaint is GRANTED IN PART and DENIED IN PART, and Defendant Unum's Motion to Dismiss Counts II through VIII and ERISA Penalty Claim in Plaintiff's First Amended Complaint is GRANTED.

An appropriate order shall issue.