UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-209

ROSE MOSS, INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE OF
GARY L. MOSS                                                                                   PLAINTIFF

v.

UNUM LIFE INSURANCE COMPANY OF
AMERICA, SERVICEMASTER and
SERVICEMASTER HEALTH AND
WELFARE BENEFIT PLAN                                                              DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Motion to Compel (Docket #56). Defendant Unum Life Insurance Company of America ("Unum") has responded (Docket #62). Plaintiff has replied (Docket #64). This matter is now ripe for adjudication. For the following reasons, Plaintiff's motion is DENIED.

BACKGROUND

Gary L. Moss ("Moss") was an employee of ServiceMaster until his termination on August 5, 2008. As part of his employment, Moss was a participant in ServiceMaster's life insurance plan, through which Moss paid monthly premiums to Unum for supplemental life insurance. ServiceMaster paid a premium of approximately $14.04 per month for basic life insurance for Moss. In addition, Moss paid $117.20 per month for supplemental life insurance through Unum. Moss passed away approximately two months after his termination from ServiceMaster. Plaintiff Rose Moss is Moss's widow and life insurance beneficiary.

Suffering from lung cancer, Moss had been declared and treated as disabled by ServiceMaster and Unum since April 13, 2008. On April 25, 2008, ServiceMaster sent Moss a

statement of benefits, which detailed those benefits that would continue as a result of his long-term disability. This included his supplemental life insurance policy at a monthly premium of $117.20, and stated "[c]overage will continue at the costs listed below for the remainder of the plan year." Moss continued to pay $117.20 each month after he began receiving disability benefits. Combined with his other benefits, Moss regularly paid $450.90 to ServiceMaster each month.

On August 7, 2008, following Moss's termination, ServiceMaster sent a conversion/portability notice to Moss regarding conversion of his benefits into personal insurance policies obtained directly through the insurance companies, including Unum. The notice stated as follows:

> This notice provides the necessary plan information you will need if you wish to convert or port your benefit coverage to a personal policy directly with the insurance company. Included is a form that you can submit to your insurance company in order to convert or port your benefits.
>
> Please note: If you choose to continue coverage, you must return this notice with the application and the first premium payment within 31 days of the date your coverage ends. If this letter is not attached, coverage will be denied.

Conversion/Portability Notice, DN 24-17, p. 1. This notice included information regarding Moss's basic and supplemental life insurance. Moss acknowledged his right to convert and that he must do so within 31 days by signing and dating a "Notification of Conversion Privilege" form on August 29, 2008.

On August 10, 2008, ServiceMaster sent Moss a billing notice which showed payments by Moss of $450.90 and a credit of $378.18. The statement indicated that the credit was either "a correction to a previous charge, a change in coverage, a refund of prepaid amounts, or a returned payment." The statement also showed a zero balance as the amount due. On August

25, 2008, Moss's billing notice showed $2,516.90 in payments received, $719.10 in current billing charges (COBRA medical charges), $224.93 in account adjustments, and a credit of $1,121.97. ServiceMaster asserts that the $2,516.90 payment was for COBRA coverage after Moss's termination.

Moss applied for conversion of his life insurance in the amount of $110,000.00 for Moss and $50,000.00 for Plaintiff on September 9, 2008. On September 10, 2008, Unum contacted Moss to request completion of two separate enrollment forms. The letter stated that a reply must be received by September 26, 2008. Moss passed away on September 24, 2008. On October 24, 2008, Unum sent another letter to Moss indicating that he had not completed the required forms and his file was closed. On November 10, 2008, Unum agreed to reopen the file and provide life insurance benefits to Plaintiff in the amount of $110,000.00. Plaintiff responded on November 16, 2008, and accepted the $110,000.00. Unum did not pay any sum of money to Plaintiff for supplemental life insurance.

On October 8, 2009, Plaintiff's counsel wrote to Unum requesting copies of all insurance policies, plans and applications. On November 12, 2009, Unum wrote to Plaintiff's counsel advising Plaintiff that Moss was not covered by a group policy and the issue of converted coverage was being addressed separately by the Conversion Unit. The Conversion Unit advised Plaintiff's counsel on December 22, 2009, that no supplemental coverage was converted by Moss. An appeal of this decision was filed on February 10, 2010 and Plaintiff's claim for supplemental life insurance benefits was again denied on March 2, 2010.

Plaintiff filed suit in McCracken Circuit Court on November 13, 2009, to recover supplemental life insurance benefits under the Employee Retirement Income Security Act of

1974, 29 U.S.C. § 1001 et seq. ("ERISA").  Defendant Unum removed the case to this Court on December 16, 2009.  It is important for purposes of this motion to note that this lawsuit was filed before the final benefit decision was made.

Unum submitted the administrative file in this case on October 20, 2010.  Unum also sent a privilege log to Plaintiff noting that certain portions of the file were withheld on the basis of attorney-client privilege.  On November 29, 2010, Plaintiff filed the present motion to compel on the basis that these documents were wrongfully withheld from the administrative file.  The Court now considers this motion.

**DISCUSSION**

The issue in this case is whether the fiduciary exception to the attorney-client privilege applies to the documents withheld by Defendant Unum as privileged.  Plaintiff argues that this exception applies and requires production of these documents, while Unum believes that the exception does not apply, or if it does, is inapplicable to the withheld documents.

**I.      The Fiduciary Exception**

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The attorney-client privilege is not "'ironclad,'" however, and is subject to exceptions. *In re United States*, 590 F.3d 1305, 1310 (Fed. Cir. 2009) (quoting *Garner v. Wolfinbarger*, 430 F.2d 1093, 1101 (5th Cir. 1970)).  One such exception is the fiduciary exception, which requires that "when an attorney gives advice to a client who is acting as a fiduciary for third-party beneficiaries, that attorney owes the beneficiaries a duty of full

4

disclosure." *Parker v. Stone*, No. 3:07-cv-00271 (VLB), 2009 WL 1097914, at *2 (D. Conn. Apr. 21, 2009) (citing *In re Long Island Lighting Co.*, 129 F.3d 268 (2d Cir. 1997)).

Under the fiduciary exception in the context of ERISA, "a fiduciary of an ERISA plan 'must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan.'" *Bland v. Fiatallis North America, Inc.*, 401 F.3d 779, 787 (7th Cir. 2005) (quoting *In re Long Island Lighting Co.*, 129 F.3d at 272). This is because "[w]hen an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." *Widbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992) (citing *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F. Supp. 906, 909 (D.D.C. 1982)).

The fiduciary exception generally applies only to communications related to plan administration and not to communications after a final decision or "addressing a challenge to the plan administrator in his or her personal capacity . . . ." *Redd v. Brotherhood of Maintenance of Way Employees Div. of the Int'l Brotherhood of Teamsters*, No. 08-11457, 2009 WL 1543325, at *1 (E.D. Mich. June 2, 2009). As the Ninth Circuit explains:

> Thus, the case authorities mark out two ends of a spectrum. On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries . . . , the attorney-client privilege remains intact.

*United States v. Mett*, 178 F.3d 1058, 1064 (9th Cir. 1999). "[H]ard cases should be resolved in favor of the privilege, not in favor of disclosure." *Id.* at 1065.

5

Although the Sixth Circuit has not addressed the fiduciary exception in regards to an ERISA case, it has recognized the exception in a different context. *See Fausek v. White*, 965 F.2d 126, 133 (6th Cir. 1992) (applying the exception to a dispute between a corporation and its minority shareholders). Several district courts in the Sixth Circuit have applied or discussed the fiduciary exception in ERISA cases. *See, e.g.*, *In re Trans-Industries, Inc.*, No. 1:10 MC 34, 2010 WL 5116906 (N.D. Ohio Dec. 9, 2010); *Redd*, 2009 WL 1543325 at *1; *Shields v. Unum Provident Corp.*, No. 2:05-CV-744, 2007 WL 764298 (S.D. Ohio Mar. 9, 2007). Accordingly, the Court finds that it is appropriate to consider whether the fiduciary exception to the attorney-client privilege applies in this case.

## II.     *Wachtel v. Health Net, Inc.*

Unum urges the Court to adopt the Third Circuit's reasoning in *Wachtel v. Health Net, Inc.*, 482 F.3d 225 (3d Cir. 2007), and find that the fiduciary exception does not apply to the facts of this case. In *Wachtel*, the Third Circuit examined whether the fiduciary exception "applies with equal force to all fiduciaries under ERISA." *Id.* at 230. Finding that it does not, the Third Circuit held that Health Net, Inc., as the insurer, was not a fiduciary to whom the exception applied. *Id.* at 234. The court determined:

> four factors--unity of ownership and management, conflicting interests regarding profits, conflicting fiduciary obligations, and payment of counsel with the fiduciary's own funds– indicate that an insurer which sells insurance contracts to ERISA-regulated benefits plans is not itself the sole and direct client of counsel retained by the insurer, not the mere representative of client-beneficiaries, and not a joint client with its beneficiaries.

*Id.* at 236. Coupled with an insurer's limited fiduciary obligations under ERISA, the Third Circuit concluded that the fiduciary exception was inapplicable to insurers in the context of ERISA. *Id.* at 236-37.

6

At least two district courts have rejected the reasoning of *Wachtel*. *See Buzzanga v. Life Ins. Co. of North America*, No. 4:09-CV-1353 (CEJ), 2010 WL 1292162, at *3 (E.D. Mo. Apr. 5, 2010); *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 50-53 (D. Mass. 2007). In *Smith*, the district court first noted that there was no statutory basis for applying the fiduciary exception to all ERISA fiduciaries except insurers. 245 F.R.D. at 51. Noting that the attorney-client privilege should not be used to narrow the scope of a fiduciary's obligations, the district court held that the goal of full and fair review "would be frustrated if insurers were able to limit access to such information through a claim of attorney-client privilege." *Id.*

*Smith* also disagreed with *Wachtel*'s holding that plan beneficiaries are not the "real clients" of fiduciary insurers. *Id.* at 52. First the district court held that the difference in management of assets, whether the fiduciary holds assets in trust or manages their own assets, "should not alter the relationship between the fiduciary and the plan beneficiaries." *Id.* Citing differences in First Circuit law, the district court also noted that the significance placed by *Wachtel* on an inherent conflict of interest "'is not as serious as might appear at first blush.'" *Id.* (quoting *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998)). Additionally, the fact that an insurer handles multiple plans and claims is not so different from other fiduciaries as to alter any fiduciary obligations. *Id.* Finally, the district court held that because the insurer in *Smith* used its own in-house counsel, *Wachtel*'s reasoning as to an insurer bearing its own legal costs was inapplicable. *Id.*

Like *Smith*, Unum's legal advice was obtained from in-house counsel, and therefore, Unum did not occur any additional cost. In addition, the Court agrees with the finding in *Smith* that there is no statutory basis for applying the fiduciary exception to all fiduciaries except

7

insurers, i.e., the duty to disclose is the same. It is unnecessary, however, for the Court to adopt the reasoning of *Wachtel* or *Smith* at this time because the Court's *in camera* review reveals that the fiduciary exception does not apply to the privileged documents.

**III.    *In Camera* Review**

The Court ordered Unum to produce the withheld documents for an *in camera* review. The Court has reviewed these documents (000315, 000317, 000320, 000325-000326, 000396-000397, 000424-000425, 000427, 000431-000433, 000435-000438, 000441-000442, 000458, 000463) and finds that all of the documents are privileged and the fiduciary exception does not apply.

   *A.     The Attorney-Client Privilege*

Unum claims that the documents at issue are protected by the attorney-client privilege. "The elements of attorney-client privilege are as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)). Application of the attorney-client privilege is a mixed question of law and fact. *Id.* at 355. "The burden of establishing the existence of the privilege rests with the party asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) (citing *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983)).

"[I]t is now well settled that private corporations and other organizations may constitute clients for purposes of the attorney-client privilege." *Reed*, 134 F.3d at 356 (citing *Upjohn Co.*

*v. United States*, 449 U.S. 383 (1981)). Corporations act through their agents, and the attorney-client privilege applies to communications between counsel and top management. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). "[U]nder certain circumstances, communications between counsel and lower-level employees are also covered." *Id.* (discussing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)). The Ninth Circuit interpreted *Upjohn* to stand for the proposition that "the privilege applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation." *Admiral Ins. Co. v. United States Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1492 (9th Cir. 1989) (citing *Upjohn*, 449 U.S. at 394).

Upon an *in camera* review of the documents provided by Unum, the Court finds that the attorney-client privilege applies to all of the documents, and that these documents were properly withheld from the administrative record.

    B.    *The Fiduciary Exception*

Plaintiff believes she is entitled to these privileged documents under the fiduciary exception. The parties do not dispute that these documents were created before a final benefits determination was made and after the initiation of this legal matter. The Court finds, however, that the fiduciary exception does not apply to the withheld documents. None of the documents concern administration of the plan; rather, as noted in Unum's privilege log, the withheld communications concern the pending lawsuit. *See Mett*, 178 F.3d at 1064 (9th Cir. 1999). Accordingly, despite the fact that these communications occurred prior to a final benefits

9

determination, the fiduciary exception does not apply.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to Compel is DENIED.