UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-209

ROSE MOSS, INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE OF
GARY L. MOSS                                                                          PLAINTIFF

v.

UNUM LIFE INSURANCE COMPANY OF
AMERICA, SERVICEMASTER and
SERVICEMASTER HEALTH AND
WELFARE BENEFIT PLAN                                                        DEFENDANTS

## MEMORANDUM OPINION

This administrative review is before the Court upon the briefs of Defendants Unum Life Insurance Company of America (Docket #66) and The ServiceMaster Health and Welfare Benefit Plan (Docket #68), and Plaintiff Rose Moss's Motion to Reverse Decision of Unum Life Insurance Company of America (Docket #67). The parties have responded (Docket #74, 75, 76). This matter is now ripe for adjudication.

## BACKGROUND

Gary L. Moss ("Moss") was an employee of ServiceMaster from 1989 until his termination due to illness on August 5, 2008. Administrative Record at 16 [hereinafter "AR"]. As part of his employment, Moss participated in ServiceMaster's life insurance plan, effective January 1, 2003. AR at 16. Life insurance coverage was provided by Unum Life Insurance Company ("Unum"). AR at 43. ServiceMaster paid the premiums for basic life insurance in the amount of $110,000.00 and Moss paid $117.20 per month for supplemental life insurance in the amount of $293,000.00. AR at 482-83. Suffering from lung cancer, Moss stopped working at ServiceMaster on January 6, 2008. AR at 22. He became entitled to receive long term disability

benefits on April 15, 2008. AR at 389.

Moss passed away on September 24, 2008, approximately two months after his termination from ServiceMaster. AR at 17. Lung cancer was listed as the cause of death. AR at 366. Plaintiff Rose Moss is Moss's widow and life insurance beneficiary. AR at 18.

After he was terminated from ServiceMaster, Moss acknowledged his right to convert his insurance policies, and that he must do so within thirty-one days, by signing and dating a "Notification of Conversion Privilege" form on August 29, 2008. AR at 414. Moss applied for conversion of his life insurance in the amount of $110,000.00 for Moss and $50,000.00 for Plaintiff on September 2, 2008. AR at 415-16. On September 10, 2008, Unum contacted Moss to request completion of two separate enrollment forms. AR at 194-95. The letter stated that a reply must be received by September 26, 2008. AR at 194. Moss passed away on September 24, 2008. AR at 366. On October 24, 2008, Unum sent another letter to Moss indicating that he had not completed the required forms and his file was closed. AR at 182. On November 10, 2008, Unum agreed to reopen the file and provide life insurance benefits to Plaintiff in the amount of $110,000.00. AR at 341-42.

On October 8, 2009, Plaintiff's counsel wrote to Unum requesting copies of all insurance policies, plans and applications. AR at 226. On November 12, 2009, Unum wrote to Plaintiff's counsel advising Plaintiff that Moss was not covered by a group policy and the issue of converted coverage was being addressed separately by the Conversion Unit. AR at 291-93. The Conversion Unit advised Plaintiff's counsel on December 22, 2009, that no supplemental coverage was converted by Moss. AR at 420-22. An appeal of this decision was filed on February 10, 2010. AR at 466-72. Plaintiff's claim for supplemental life insurance benefits was

again denied by letter dated March 2, 2010. AR at 593-602.

Plaintiff filed suit in McCracken Circuit Court on November 13, 2009, to recover supplemental life insurance benefits. DN 1-1, p. 5, 11. Defendant Unum removed the case to this Court on December 16, 2009, asserting that the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") governs this case. DN 1, p. 2. Unum submitted the administrative file in this case on October 20, 2010. DN 55. The Court has reviewed the administrative file and the parties' briefs.

## STANDARD

**I.     Standard of Review**

Generally, courts "review a plan administrator's denial of ERISA benefits *de novo*." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, when "a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious." *Id.* "The arbitrary and capricious standard is the least demanding form of judicial review and is met when it is possible to 'offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Admin. Comm. of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d 981, 989 (6th Cir. 1999) (citation omitted). "Consequently, a decision will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted).

The parties disagree as to the appropriate standard of review. Unum believes that the arbitrary and capricious standard is proper because the Plan specifically delegates to Unum

3

"discretionary authority to make benefit determinations under the Plan." Policy, ADDLSUM-6 (1/1/2008). Specifically, the Policy provides:

> The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, persons or entities. Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing provisions of the Plan. All benefits determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

Policy, ADDLSUM-6 (1/1/2008). In contrast, Plaintiff believes *de novo* is the appropriate standard of review because the discretionary clause cited by Unum is no longer permitted by the Kentucky Department of Insurance. In support of this argument, Plaintiff submits two advisory opinions (dated June 6, 2008, and March 9, 2010) from the Kentucky Department of Insurance Commissioner addressing discretionary clauses. *See* DN 75-6, 75-7. Plaintiff also submits a letter from Malinda Shepherd, a program manager with the Health and Life division of the Kentucky Department of Insurance. *See* DN 75-8. Ms. Shepherd's letter indicates that the summary of benefits would have been required to be approved under Ky. Rev. Stat. § 304.14-120(1), but she could not find any documentation indicating that such approval was given. *Id.* She also notes that "[t]he discretionary language would have been required to be removed." *Id.*

The Court has reviewed these documents and the parties' arguments and finds that arbitrary and capricious is the appropriate standard of review. Both of the opinions on discretionary clauses issued by the Department of Insurance note that they are advisory and "not legally binding on either the Department or the reader." DN 75-6, 75-7. In addition, neither opinion expressly prohibits the use of discretionary clauses, but rather provides guidance as to

4

how such clauses will be reviewed. Moreover, the timing of the issuance of these advisory opinions and the events taking place in this case makes the application of these advisory opinions questionable. To the extent Plaintiff argues that the Policy has not been approved by the Kentucky Department of Insurance, the Policy becomes voidable, such that the insured may either "rescind the policy in its entirety or [ ] accept the policy's benefits under the agreed-upon terms." *Horn v. Provident Life & Acc. Ins. Co.*, 351 F. Supp. 2d 954, 960 (N.D. Cal. 2004) (citing *Urrutia v. Decker*, 992 S.W.2d 440, 443 (Tex.), *cert. denied*, 528 U.S. 1021 (1999)). In this case, Plaintiff has already accepted benefits under the terms of the Policy. Thus, she is bound by its terms, including the discretionary clause. *See id.* at 961.

In addition, Plaintiff argues that the standard of review is affected by the inherent conflict of interest because Unum both determines and pays for benefits. The Court must consider potential conflicts of interest, including situations where the plan administrator is also the payer of benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007). However, a conflict of interest is just one factor considered in the Court's determination; it does not change the standard of review. *Glenn,* 554 U.S. at 116-17.

## II.     Evidence Considered

To begin with, the Court recognizes that "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). This is true whether the standard of review is *de novo* or arbitrary and capricious. *See Lehman v. Exec. Cabinet Salary Continuance Plan*, 241 F. Supp. 2d 845, 848

(S.D. Ohio 2003) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998)). The administrative record includes all documentation submitted during the administrative appeals process "because this information was necessarily considered by the plan administrator in evaluating the merits of the claimant's appeal." *Kalish v. Liberty Mut.*, 419 F.3d 501, 511 (6th Cir. 2005).

Plaintiff argues, however, that the Court should consider additional material not within the administrative record. Plaintiff asks the Court to consider letters and billing statements sent by ServiceMaster and the Plan to Mr. Moss concerning his premium payments. Plaintiff notes that because the Plan is still a party, these documents may be properly considered.

The purpose of this review is to determine whether the plan administrator's denial of benefits was proper. The fact that the Plan is also a party does not change this analysis. The Court should only consider evidence that was not before the plan administrator if there is a procedural challenge, such as denial of due process or bias. *See, e.g.*, *McCann v. Unum Life Ins. Co. of America*, 384 F. Supp. 2d 1162, 1166-67 (E.D. Tenn. 2003) (referencing *Wilkins*, 150 F.3d at 615). In this case, Plaintiff raises one procedural issue: that an inherent conflict of interest exists because Unum determines and pays benefits. Accordingly, the Court, in considering this, may look to evidence outside of the administrative file. Plaintiff's other arguments rely on outside evidence in support of substantive arguments. Such consideration of outside materials for this purpose is not permitted.

## DISCUSSION

Plaintiff argues that Unum's decision to deny Plaintiff's claim for supplemental life insurance benefits was improper because (1) Moss paid premiums for the month of August 2008

6

which should have provided coverage until the end of September 2008, (2) Unum extended the time period for conversion in its letter dated September 10, 2008, and (3) Moss was never given proper notice of his conversion rights. The Court also considers Unum's inherent conflict of interest.

**I.    Payment of Premiums**

First, Plaintiff argues that because Moss paid a premium in August of 2008, he was entitled to coverage beyond his termination date. Plaintiff argues that Moss should have been provided insurance coverage through the end of August 2008 instead of August 5, 2008. According to Plaintiff, Moss then died within the 31-day conversion period without converting his policy. If death occurs during the 31-day conversion period, Unum is bound to pay the amount of insurance that *could* have been converted.

The administrative record indicates that Unum acknowledged premiums paid from January 6, 2008, through Moss's termination date, August 5, 2008. Plaintiff places a lot of emphasis on one entry made on October 10, 2008, in Unum's database which states:

> Covered under sickness and injury to 12 month prov in policy as long as premiums continued. The premiums continued from 1/6/2008 to termination date of 8/5/2008
> Died 9/24/2008 ??
>
> Premiums paid to 8/5/2008 per claim form.
> Premiums paid through 8/1/2008 per merlin (60 day grace period)
> EE died 9/24/2008. PREMIUMS ARE ALL SET ON THIS CLAIM.

AR at 10. Based on this entry, Plaintiff argues that Moss's premiums were paid in their entirety for continued coverage up until his death and that the sixty day grace period provided for in the Policy applied.

First, the Court notes that Plaintiff's interpretation of the above-quoted language is

questionable. The entry clearly notes that premiums were paid only through Moss's termination date. The fact that Plaintiff then reads "PREMIUMS ARE ALL SET ON THIS CLAIM" as a statement that Moss had paid premiums up until his death or through the end of August 2008 is inconsistent with the rest of the entry. In any event, this language, when read in light of the remaining internal entries and emails, does not indicate that Unum's review of Moss's claim was arbitrary and capricious.

The 60 day grace period refers to the employer's obligation to pay premiums in a timely manner to Unum. The Policy notes that the employer is required to send premiums to Unum, and Unum may cancel the Policy if "the Employer fails to pay any portion of the premium within the 60 day **grace period**." AR at 60 (emphasis in original). The policy defines "grace period" as "the period of time following the premium due date during which premium payment may be made." AR at 90. Plaintiff alleges that Moss paid premiums through August 31, 2008, to ServiceMaster, who then had to pay such premiums to Unum within the 60 day grace period. What Plaintiff fails to acknowledge, however, is Moss's termination and the effect that this termination had on his ability to receive coverage under the group Policy. After Moss was terminated, he had to convert his coverage to an individual Policy. His employer was no longer obligated under the Policy to provide premium payments to Unum for his part of the group Policy.

Plaintiff continues to argue, however, that Moss was entitled to coverage under the group Policy after his termination. Plaintiff asserts that Moss's coverage continued for twelve months, pursuant to the Policy's provisions covering those not working due to injury or sickness. The Court has already addressed Plaintiff's argument that the Policy language permitted Plaintiff's

8

coverage to continue for twelve months. In addressing ServiceMaster's motion to dismiss, the Court held:

> The Court finds that Plaintiff's arguments are without merit as the Plan and Policy language is consistent and unambiguous. An employee becomes eligible to participate in the Plan and receive coverage under the Policy if they are "regular full-time" employees who work "at least 30 hours a week." Moss was such an employee prior to being declared disabled. Therefore, he was eligible to participate in the Plan and to receive basic and supplemental life insurance. If an employee then becomes sick or injured and must miss work as a result, the Policy provides that coverage may continue so long as the employee continues to pay the premium. Moss was an eligible employee when he became disabled, and this exception allowed him to maintain coverage. Therefore, these two provisions do not conflict, nor are they ambiguous.
>
> Once an employee is not working due to injury or sickness, he or she "may continue to be covered for up to 12 months." Unum Policy, DN 24-3, p. 24. The word "may" should be given its ordinary meaning,[ ] which cannot be read as a guarantee of coverage for twelve months. *See, e.g.*, *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73-74 (Ky. 2010) (terms not defined in an insurance policy are given their ordinary meaning if not ambiguous). The injury or sickness provision does not extend Moss's conversion period because it provides "[i]f you are *not working* due to injury or sickness . . . you may continue to be covered . . . ." Unum Policy, DN 24-3, p. 24 (emphasis added). Thus, continuation of coverage is conditional on Moss not working due to injury or sickness. Following Moss's termination, he was not working due to his termination, not due to injury or sickness. Accordingly, this provision no longer applied after Moss's termination and whether he continued to pay premiums is irrelevant. The Plan is unambiguous in stating that coverage ends upon termination, and conversion must take place within 31 days.

Mem. Op., DN 49, p. 11-12. Accordingly, Plaintiff's argument that Moss was entitled to coverage for twelve months is without merit.

A review of the record and the Policy indicates that, despite any payment of premiums intended to continue coverage after Moss's termination date, Moss's coverage under the group Policy ended on August 5, 2008. After this date, he was no longer an eligible employee and was required to convert his coverage to an individual Policy. There is nothing to indicate that

9

Unum's decision to deny continued coverage under the group Policy was arbitrary and capricious because the payment of premiums beyond Moss's termination date did not automatically convert his coverage. Unum correctly noted that Moss's premiums were paid through his termination date.

## II.     Extension of the Conversion Period

Plaintiff also asserts that Unum, through its letter dated September 10, 2008, extended the conversion period. Unum's letter to Moss on September 10, 2008, stated:

> Dear Mr. Moss:
>
> Thank you for electing to convert your Whole Life Conversion coverage, a feature of your group plan. Before we can confirm your coverage, we will need the following information or requirements:
>
> You are also requesting Conversion coverage for your spouse. This requires you to complete two separate enrollment forms. We have enclosed the appropriate forms to review and return to us.
>
> We know you realize the importance of this valuable protection and would like to provide you with the opportunity to maintain your coverage. **We would like to share some information with you concerning the enrollment period. Due to contractual requirements regarding the time limits for eligibility, it is important that we receive your reply in our office by September 26, 2008.**
>
> Please note, there will be no further communications if we do not receive a response by the requested date. If the requirements are not received within the given grace period; portability will no longer be an option and the check submitted with your initial application will be voided and subsequently destroyed after a certain amount of time. **It is important to note that this offer to accept late requirements is not an extension of benefits. Your life insurance coverage under your employer's group policy remains in effect for 31 days after the date of termination or reduction of coverage.**
>
> If you have any questions or if we can be of further assistance, please contact a representative at the address shown above. Please address all correspondence to the attention of the Portability/Conversion Unit.

AR at 194-95 (emphasis added). This letter was sent to Moss because he had failed to file

10

separate enrollment forms for himself and his wife in order to convert his coverage. This is explained in more detail in a denial letter sent to Plaintiff's attorney on December 22, 2009.

> I have completed the claim review and determined that the supplemental life insurance benefits in the amount of $293,000 are not payable and would like to take this opportunity to explain to you how I arrived at my decision.
>
> Gary Moss terminated employment with ServiceMaster on August 5, 2008. On August 7, 2008, ServiceMaster sent a Health & Welfare Benefit Plan Conversion/Portability Notice to Gary Moss at his home address. This Conversion/Portability notice included both the basic coverage, $110,000, and the supplemental coverage, $293,000, that Mr. Moss was eligible to continue. Mr. Moss was responsible for submitting the application to Unum within the later of 31 days from the date of termination or 15 days from the date of notification.
>
> The application for Whole Life Conversion coverage which Mr. Moss submitted to Unum on September 2, 2008 included both Gary Moss and his spouse, Rose Moss. The application requested $110,000 in basic life coverage for Gary Moss and $50,000 of coverage for Rose Moss. The application was signed by both applicants. Unum requires a separate enrollment form for each insured requesting coverage, as Whole Life Conversion is administered at an individual level.
>
> . . .
>
> On September 10, 2008, we returned the application submitted by Gary Moss to his address on file and requested separate completed applications for the insured and spouse by September 26, 2008. The appropriate forms were enclosed to be signed by each applicant. The letter further advised: "*It is important to note that this offer to accept late requirements is not an extension of benefits.*"

AR at 420-21 (emphasis in original). Plaintiff's argument that the letter extended the period for conversion ignores the language of the September 10, 2008, letter (which is highlighted in the denial letter sent to Plaintiff's attorney). This language specifically noted that there was no extension of coverage and referenced the 31 day conversion period through which benefits would continue. The September 26, 2008, deadline followed an explanation of the additional forms to be completed by Moss and his wife. The sole purpose of the letter appears to be to allow Moss and his wife to complete the proper forms to convert their coverage, i.e., to correct a

11

procedural mistake.

The Court finds that this letter did not extend the conversion period beyond the original 31 day period. Accordingly, Plaintiff's argument that Unum extended the conversion period does not support the claim that Unum's decision was arbitrary and capricious. Unum offered a reasoned explanation for its decision that is both rational and supported by the evidence.

## III. Notice of Conversion Rights

Next, Plaintiff argues that she was never notified by ServiceMaster or Unum regarding the amount of coverage that could be converted. Given this improper notice, Plaintiff argues, Moss had 60 days following his termination to convert his supplemental life insurance. In support of this argument, Plaintiff cites to a provision of the Policy which describes notice of conversion privileges:

> ***EMPLOYER NOTICE***
>
> Your Employer must notify each person of their conversion privileges within 15 days from the date that person's life insurance terminates.
>
> If your Employer does not notify that person within those 15 days, but does notify that person within 60 days from the date that person's life insurance terminates, the time allowed for that person to exercise their life conversion privileges will be extended 15 days from the date that person is notified.
>
> If your Employer does not notify that person within those 60 days, the time allowed for that person to exercise that person's life conversion privilege will expire at the end of those 60 days.

AR at 73. The administrative record indicates that ServiceMaster alerted Moss to his conversion rights on August 7, 2008, following his termination. AR at 202, 420. Plaintiff argues that this notice was insufficient because it did not state the amount of coverage that could be converted. Specifically, Plaintiff's affidavit dated February 10, 2010, states as follows:

> When my husband received the "Life Insurance Conversion Notification of Conversion Privilege" (page 301), the top part was not completed by ServiceMaster. I had to fill in all of the employer's part, which is done in my handwriting. I did not know what figure to put in the blank titled "Amount of Coverage Lost" and thus left it blank. No one from either Service Master or Unum notified me that the amount of coverage that could be converted. At that time it was clear that Gary's death was imminent.

AR at 494.

ServiceMaster's notice to Moss appears to meet the requirements of the Policy which states that the employer must notify the employee of their conversion rights within 15 days of the termination of benefits. Nothing in the Policy's language elaborates upon the employer's notice requirement. Nor has Plaintiff pointed to any other provision of the Policy which indicates that the employer is required to provide notice of the amount of coverage that may be converted.

Plaintiff argues that ServiceMaster's August 7, 2008, letter regarding notice of conversion rights was insufficient because it did not provide conversion forms when it indicated that forms were enclosed and failed to properly indicate how much coverage could be converted. A review of the notice, however, shows that the notice did indicate that Moss had $110,000 in active basic life insurance coverage and $293,000 in active supplemental life insurance coverage. AR at 158-160. The notice also provides a phone number to call for additional information. AR at 164. Plaintiff also alleges that the form sent to Moss to convert his coverage failed to notify him of the amount of coverage that could be converted and ServiceMaster failed to complete the top section which indicated that the employer was to complete that portion. While ServiceMaster's notice in this situation may be less than ideal, the fault appears to lie with ServiceMaster, not Unum. Unum's Policy merely requires that the employer provide some type of notice to its employees within 15 days of the termination of benefits. ServiceMaster's August

13

7, 2008, letter provided this notice. Therefore, the Policy's requirement was met. Unum based its decision on this notice, and the Court cannot say that Unum's decision was arbitrary and capricious.

## IV. Conflict of Interest

As a final matter, Plaintiff contends that the Court should consider Unum's inherent conflict of interest. Neither party disputes that Unum both determines and pays benefits. As noted earlier, the Court should these potential conflicts of interest. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007). The Supreme Court recently ruled in *Glenn* that a conflict of interest is of greater importance where there is "a history of biased claims administration . . . ." *Id.* A conflict should not be a substantial factor, however, if the insurer has taken steps to reduce bias, such as "walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking . . . ." *Id.* The First Circuit has interpreted these statements to mean that "courts are duty-bound to inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflicts." *Denmark v. Liberty Life Assurance Co. of Boston*, 566 F.3d 1, 9 (1st Cir. 2009).

Although the Court considers this conflict of interest, it is insufficient to outweigh the Court's other findings that Unum's decision was not arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, Plaintiff's claim for relief is DENIED and this matter is DISMISSED.

An appropriate order shall issue.